UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RH NEW ORLEANS HOLDINGS, LLC,<br><br>　　　　　　　　　　　Plaintiff,<br><br>-against-<br><br>SERENE INVESTMENT MANAGEMENT, LLC, and ADAM PHILLIPS,<br><br>　　　　　　　　　　　Defendants. | ECF No.: 1:24-cv-06331<br><br>**AMENDED COMPLAINT**<br>**Jury Trial Demanded**<br><br>**Hon. Jed S. Rakoff.** |

Plaintiff RH NEW ORLEANS HOLDINGS, LLC ("Plaintiff" and "RH"), by and through its attorneys, Yifat V. Schnur Esq. LLC, alleges upon information and belief:

1. Plaintiff RH New Orleans Holdings is a Louisiana limited liability company and a branch of RH New Orleans Holdings a Delaware limited liability company.

2. RH authorized to transact business in the state of New York.

3. RH is an affiliate entity of Plaintiff Capital LLC.

4. Mark Silber resides in New York and is the Sole Shareholder of CBRM Realty Inc. which is 100% owner of Plaintiff.

5. Defendant Serene Investment Management, LLC ("Defendant" and "Serene") is as a California limited liability company.

6. Defendant Adam Phillips is sole member of Serene and a resident and domiciliary of California.

7. Serene is a foreign limited liability company.

8. Serene engages and transacts business in the State of New York.

9. Serene is authorized to transact business in the State of New York.

10. On or about February 2024 Plaintiff contacted Serene for the purpose of borrowing up to ten million dollars ($10,000,000) in connection with a mortgage of the premises commonly known as Carmel Spring located at 12151 I-10 Service Rd New Orleans, LA 70128; and Laguna Creek located at 6881 Parc Brittany Blvd New Orleans, LA 70128; and Redstone located at 3526 Stonegate Dr Flint MI 48507 ("Premises").

11. Plaintiff negotiated the terms of the lending agreement in New York County within New York State.

12. Plaintiff spoke with Phillips Principal of Serene on at least five (5) separate occasions and as many as seven occasions (7).

13. During each and every conversation or conference call Phillips represented, falsely, that Serene specifically lends to Companies experiencing the difficulties Plaintiff was handling and further representing that is why the lending rates where so high.

14. Serene through Phillips advised Plaintiff that it would lend Plaintiff the requested funds, subject to generally accepted lending terms, but at very high rate of interest, 18% and a default rate of an additional 12%, provided Serene had a first-priority mortgage on the subject Premises located in Louisiana.

15. Serene then represented to Plaintiff that upon conducting due diligence, Defendants determined Plaintiff had a sufficient credit rating and credit history to borrow the requested funds.

16. To further induce Plaintiff to proceed with borrowing the funds from Serene—as opposed to another lending company—Serene then represented to Plaintiff that it had sufficient funds available to lend Plaintiff.

17. Defendants further advised they would loan to Plaintiff could be paid within one week of Plaintiff submitting a retainer.

18. In order to proceed with the loan, Serene informed Plaintiff that it needs to retain counsel and incur other borrower costs.

19. Based on Serene's representations and statements to Plaintiff, Plaintiff proceeded to retain counsel by hiring Mayer Brown LLP.

20. In further attempt to induce Plaintiff's reliance on Serene's knowingly fraudulent misrepresentations that Serene would in fact lend money to Plaintiff, Serene requested to speak with the attorney who represents Plaintiff's principal.

21. Serene via Phillips also represented that the interest rate is so high due to the particular circumstances of Plaintiff's principal but that would not be a problem, Serene's business platform is to specifically lend in the types of situations discussed between Serene and Plaintiffs' Principal's attorney and that Serene would fund the deal within one week of receiving the retainer.

22. In good faith reliance on Serene's representations, Plaintiff incurred legal costs in excess of $238, 071.55.

23. In addition, based on Serene's representations and statements to Plaintiff, Plaintiff incurred other borrower costs for the purpose of borrowing funds from Serene.

24. On or about February 25, 2024, Plaintiff and Serene entered into a contract outlining the terms represented during the phone calls between the parties.

25. The terms of the contract were memorialized in what Serene titled "Bridge Term Sheet."

26. The term sheet had specific language regarding a retainer fee that had to be paid within one business day.

27. In reliance on Serene's representations and the statements made to Plaintiff, Plaintiff wired the retainer fee to Serene on February 26, 2024.

28. Plaintiff incurred these costs due to its good faith reliance on Serene's representation that it would lend Plaintiff up to ten million dollars ($10,000,000).

29. Despite the representation by Serene that their company specifically provides loans under the circumstances articulated by Plaintiff during numerous calls between the parties and as articulated and discussed in detail during calls between attorneys for the parties, in or about March 2024, Serene informed Plaintiff that it will not lend Plaintiff the ten million dollars ($10,000,000).

30. Defendants refused to fund the loan and only notified Plaintiff after receiving Plaintiff's retainer fee and a mere one day before the loan was to be funded.

31. Defendants refused to provide any explanation for their failure to fulfill their obligations under the agreement.

32. As a result of Defendant's misrepresentations and actions, Plaintiff owes $238,071.55 to Mayer Brown LLP, and has paid a $100,000.00 retainer fee to Serene and incurred other costs and expenses associated with same.

33. These other costs include three hundred thousand dollars ($300,000.00) owed to Piper Sandler for broker fees.

34. Significantly, as a result of Defendant's actions and misrepresentations, Plaintiff was forced incur other borrower cost and expenses.

35. At all times relevant to this Complaint, Defendants knew that its statements and representations to Plaintiff, including the representation that Serene had sufficient funds to lend Plaintiff and the representation that Plaintiff had sufficient credit rating and credit history to borrow the funds, were materially false.

36. To date, Serene refused to return the $100,000 retainer fee paid by Plaintiff.

## FIRST COUNT
(Fraudulent Inducement)

37. Plaintiff repeats and incorporates by reference the paragraphs set forth above as if fully set forth herein.

38. Serene and Phillips falsely represented Serene would lend Plaintiff monies, Plaintiff had a sufficient credit rating and credit history to borrow the funds, it possessed $10,000,000 to lend Plaintiff within one week of receiving Plaintiff's retainer and that Plaintiff needed to retain counsel and incur other borrower costs in order to proceed with the loan.

39. Serene and Phillips made these knowingly false representations for the purpose of inducing Plaintiff to pay Serene a $100,000.00 retainer fee and incur other borrower costs and did so knowing that Plaintiff would be borrowing from Serene at a higher interest rate then was the market rate during the relevant time period.

40. Plaintiff was justified in its good faith reliance on Phillip's representations that Serene would lend Plaintiff up to $10,000,000 as Serene is a sophisticated lender that funds real estate projects and accepted Plaintiff's $100,000 retainer funds.

41. As a result of Phillips and Serene's misrepresentations and actions, Plaintiff owes $238,071.55 to Mayer Brown LLP, and owes $300,000 to Piper Sandler and incurred other borrowing costs.

42. Furthermore, as a result of Phillips and Serene's misrepresentations and actions, Plaintiff does not have possession or control over its $100,000.00 retainer funds.

43. Accordingly, Serene owes Plaintiff $238,071.55 owed to Meyer Brown, the $300,000 owed to Piper Sandler plus $100,000.00 and the other borrower costs incurred by Plaintiff in connection with Serene's fraudulent inducement.

## SECOND COUNT
(Breach of Contract)

44. Plaintiff repeats and incorporates by reference the paragraphs set forth above as if fully set forth herein.

45. A valid, binding and enforceable contract was created by the signed Term sheet sent by Defendants to Plaintiff requiring payment of a retainer fee within one business day.

46. Plaintiff performed all of its obligations under the Contract by funding the retainer fee, via wire transfer to Serene, within one business day as directed by Defendants and by incurring the legal fees and additional expenses also directed by Serene.

47. Plaintiff's funds were accepted by Defendants under the guise that the loan would be closed within one week of receipt of the funds.

48. Serene breached the contract when Serene refused to fund the loan the day before the loan was set to close.

49. As a result of Serene's breach Plaintiff has suffered damages in the amount of the lost retainer funds, the legal fees and additional expenses incurred.

50. As a further devastating result of Serene's breach Plaintiff has suffered the loss of its Real Estate Portfolio amounting to at least one hundred million dollars ($100,000,000.00).

51. Accordingly, Defendants owes Plaintiff $238,071.55 owed to Meyer Brown, the $300,000 owed to Piper Sandler, the $100,000.00 retainer funds, other borrower costs incurred by Plaintiff in connection with Defendant's fraudulent inducement and the one hundred-million-dollar ($1000,000,000.00) loss of its real estate portfolio.

<u>THIRD COUNT</u>
(Wire fraud - Title 18, Section 1343)

52. Plaintiff repeats and incorporates by reference the paragraphs set forth above as if fully set forth herein.

53. Defendants engaged in a scheme to defraud Plaintiff and take Plaintiff's funds using the false pretense that Defendants would in fact loan money which would be secured by the subject premises.

54. Defendants knew the representations, which Plaintiff relied on to its detriment, where false when the statements were made, and the statements were made intentionally and in furtherance of Serene's scheme to defraud Plaintiff, in order to steal Plaintiff's funds.

55. Defendants' intentional acts to deceive Plaintiff into wiring funds to Serene in reliance and fulfillment of Plaintiffs obligations under the term sheet was done in furtherance of Serene's scheme to obtain money from Plaintiff and without an intention by Serene to actually fulfil the terms of the contact which was secured via fraud and deception.

56. Serene used wire communications to further this scheme.

57. The false representations and promises made by Serene were transmitted via wire.

58. The funds Serene secured from Plaintiff were sent to Seren via wire and at the direction with instructions provided by Serene.

59. Plaintiff justifiably relied on Serene's misrepresentations, as evidenced by

its actions in retaining counsel and incurring other borrower costs.

60. Plaintiff's reliance was reasonable given Serene's position as a sophisticated lender that funds real estate projects and that Serene accepted Plaintiff's $100,000 retainer funds.

61. As a result of Defendant's wire fraud, Plaintiff suffered pecuniary losses. Plaintiff owes $238,071.55 to Mayer Brown LLP, $300,000 to Piper Sandler, and incurred other borrowing costs. Additionally, Plaintiff does not have possession or control over its $100,000 retainer funds and has lost a one hundred million dollar ($100,000,000.00) real estate portfolio.

## FOURTH COUNT
(Promissory Estoppel)

62. Plaintiff repeats and incorporates by reference the paragraphs set forth above as if fully set forth herein.

63. Defendants, promised Plaintiff that it would lend Plaintiff, subject to generally accepted lending terms and a first-priority mortgage on the Premises, up to $10,000,000 at an interest rate of 18% and default rate of an additional 12%.

64. Defendants further promised Plaintiff that Plaintiff's credit rating and credit history was sufficient to borrow the funds.

65. Plaintiff reasonably relied on Defendant's promises to retain Mayer Brown LLP, pay Serene a $100,000 retainer fee and incur other borrowing costs in connection with obtaining the loan.

66. As a result of Serene's actions, Plaintiff was forced to pay $238,071.55 to Mayer Brown LLP and lose the benefit of its $100,000 retainer fee and incur other borrowing costs.

67. Accordingly, Serene owes Plaintiff $238,071.55 plus $100,000 and the other borrower costs, including the $300,000 incurred by Plaintiff in connection with Serene's failure to lend Plaintiff funds.

## FIFTH COUNT
(Equitable Estoppel)

68. Plaintiff repeats and incorporates by reference the paragraphs set forth above as if fully set forth herein.

69. Plaintiff was justified in relying upon Defendant's statements for the purpose of retaining Mayer Brown LLP, incurring a legal bill of $238,071.55 and paying Serene a $100,000 retainer fee.

70. In the interest of fairness and to prevent injustice, Plaintiff should not be forced to incur a $238,071.55 loss due to Serene's lack of funds or change of heart.

71. Likewise, in the interest of fairness and to prevent injustice, Serene should not be allowed to keep the $100,000 retainer fee paid by Plaintiff.

72. Accordingly, Defendants should reimburse Plaintiff $238,071.55 plus $100,000, plus $300,000.00 in broker fees to Piper Sandler - under the doctrine of equitable estoppel.

## SIXTH COUNT
(Quasi Contract/Unjust enrichment)

73. The Defendants benefited in receiving a $100,000.00 in retainer funds from the Plaintiff.

74. Further the Plaintiff lost the benefit and use of its $100,000.00 as well as the other fees incurred as a result of Defendant's actions in the amount of at least $538,071.55.

75. It would be against equity and good conscience for the Defendants to keep Plaintiffs $100,000.00 and for Plaintiff to lose the money expended on legal and other related fees, in addition to suffering one hundred million dollars in lost real estate portfolio due directly to Defendants actions.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

i. An award as against Serene Investment Management, LLC and Adam Phillips, jointly and severally, in the amount of at least $638,071.55;

ii. an additional amount to be determined by the jury for Plaintiff's other damages and/or injuries including the one hundred-million-dollar ($100,000,000.00) loss of Plaintiff's Real Estate Portfolio;

iii. Attorneys' fee and costs of enforcement; and

iv. Such other and further relief as the Court may deem just and proper.

Dated: August 25, 2024

YVLS LAW
*Attorneys for Plaintiff*

_____
By: Yifat V. Schnur
26 Broadway, 19th Flr.
New York, NY 10004
347-268-5347
Yifat@yvlslaw.com

**ATTORNEY VERIFICATION**

STATE OF NEW YORK        }
                         }ss.:
COUNTY OF NEW YORK       }

      The undersigned, an attorney admitted to practice in the Courts of the State of New York, shows:

      That deponent is a member of the firm of Yifat V. Schnur Esq. LLC, the attorneys of record for the plaintiff, in the within action; that deponent has read the foregoing Summons and Complaint, and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, deponent believes same to be true. Deponent further states that the reason this Verification is made by deponent and not by said plaintiff is that said does not have an office in the county wherein plaintiff resides.

      The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows: Records and correspondence in deponent's possession.

      The undersigned affirms that the foregoing statements are true under the penalties of perjury.

Dated:  August 25, 2024

                                                                                  Yifat V. Schnur